**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

**TRISH M. BROWN**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326 – 4961

NANCY C. ANTAL
LAW CLERK

SUZANNE M. MARX
JUDICIAL ASSISTANT

January 3, 2006

Adam F. Hulbig
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683 - Ben Franklin Station
Washington, D.C.  20044-0683

Leslie Ernst
Jane Hill Rohde
419 Main Street
Blanco, TX  78606

  Re: In re Leslie Ernst and Jane Hill Rohde, Case No. 304-40684-tmb7; Leslie Ernst and Jane Hill Rohde v. United States of America, Adversary Proceeding No. 05-3095-tmb

Ladies and Gentlemen:

  This matter came before the court on a Motion for Summary Judgment filed by Defendant United States of America (hereinafter the "United States."). The United States was represented by Adam F. Hulbig. The Plaintiffs Leslie and Jane Rohde (hereinafter the "Rohdes") appeared pro se.

  The Rohdes filed a voluntary Chapter 7 case on October 6, 2004. On January 24, 2005, the United States, through the Internal Revenue Service (hereinafter "IRS"), filed a proof of claim which was amended on September 8, 2005, and sets forth assessments in the amount of $360,743.64. Of this amount, $59,348.31 is for taxes owing for the period 1994-96, $51,495.23 is interest on that amount, and $46,819.53 is for penalties on that amount for a total of $157,663.07, relating to the tax years 1994-96. In addition, the United States claims that the Rohdes owe $94,497.00 in priority taxes for tax years 1997-2003, interest of $27,094.69, and penalties of $74,522.88 for a total of $196,114.57 relating to the tax years 1997-2003.

  The United States contends that it also holds a secured claim in the amount of $6,966.00. It asserted a right to set off of the secured portion of its claim against pre-petition overpayments made by the Rohdes and filed a motion for relief from stay asking that it be allowed to exercise

its set off rights. That motion, which was unopposed, was granted and the United States has already exercised its right to set off so no secured claim remains to be paid.

On April 7, 2005, the Rohdes filed the instant complaint seeking a determination that the Secured Claims, the penalties on both the Unsecured Priority Claims of $74,522.88 and on Unsecured General Claims of $46,819.53, and the Unsecured General Claim of $110,843.54 owing to the United States is dischargeable in this bankruptcy proceeding. The United States filed a response in which it asserts that it remaining unpaid debt is non-dischargeable under either § 523(a)(1)(A), § 523(a)(1)(B)(i) or § 523(a)(7).

## FACTS

The relevant facts are not disputed.

Between April 15, 1992, and July 22, 1994, the Rohdes filed joint tax returns reflecting annual income ranging between $39,017 and $92,035 for the years 1991-93. The Rohdes did not file a return in 1995 for the 1994 tax year. On March 13, 1996, the IRS received a joint income tax return for 1994 showing zero income earned and zero taxes due ("Initial 1994 Return"). (Def's Ex. H). The Initial 1994 Return contained an altered jurat that read in pertinent part "[u]nder penalties of perjury under the laws of the United States of America and the Oregon Republic" and that it had been signed "without prejudice UCC 1-207." (Def's Ex. H at 2). Attached to this return were three pages of arguments supporting the Rohdes' contention that the internal revenue laws did not apply to them. (Def's Ex. H at 3-5).

On September 24, 1996, the IRS returned the Initial 1994 Return to the Rohdes advising them that it constituted a "frivolous" return due to the altered jurat and the baseless positions set forth in the attachments. (Def's Ex. I). The IRS requested that the Rohdes file a valid return for the 1994 year within 30 days and advised them that if they failed to do so they would be assessed a frivolous return penalty under the Internal Revenue Code § 6702. The Rohdes failed to respond to the letter and the IRS assessed a frivolous return penalty against them. In addition, it refused to accept the Initial 1994 Return for processing and prepared and filed an individual substitute return on the Rohdes' behalf for the tax period 1994.

The Rohdes did not file timely tax returns for 1995 or 1996. On February 26, 1999, the IRS prepared and filed individual substitute returns for the Rohdes for 1995 and 1996. On December 18, 2000, the IRS filed tax assessments against the Rohdes for tax years 1994, 1995 and 1996.

On July 17, 2001 the Rohdes executed documents and thereafter filed them with the IRS purporting to be tax returns for tax years 1994 ("1994 Amended Return"), 1995 and 1996. (Def's Ex. Q, R. and S). The purported returns contained zeros on all income lines, requested refund of all payments and withholdings and attached voluminous pages of arguments opposing

the application of the internal revenue laws to the Rohdes.[1] The IRS did not accept these returns for processing. (Decl. of Adam F. Hulbig Supp. Summ. J at 4-5, ¶¶ 23-24).

On December 18, 2000, the IRS assessed taxes of $59,348.31 against the Rohdes for tax years 1994-96. On June 21, 2004, it assessed taxes of $47,392.00 against the Rohdes for tax years 1997, 1998 and 1999. On August 23, 2004, the IRS assessed taxes of $33,538.00 against the Rohdes for tax year 2000. On May 31, 2004, the IRS assessed taxes of $13,567.00 for the tax year 2003.

## LEGAL ANALYSIS

1. <u>Summary Judgment Standard</u>

Summary judgment practice in this Court is governed by Fed. R. Civ. P. 56, Fed. R. Bankr. P. 7056, Local Rule 7056.1 of this Court and Local Rule 56.1 of the U.S. District Court for the District of Oregon (as adopted by this Court.) First, under Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056, the party opposing summary judgment is required to set forth "'specific facts showing that there is a genuine issue for trial,' by evidence cognizable under [Fed. R. Civ. P. 56(e)]." <u>See</u> <u>UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994), <u>cert. denied</u>, 516 U.S. 912 (1995) (citations omitted). Second, under Local Rule 56.1(b), any opposition to a motion for summary judgment must include a response to the moving party's concise station of material facts. This response must either accept or deny each fact in the moving party's concise statement or articulate arguments in opposition to the moving party's contention or interpretation of the undisputed material fact. <u>See</u> Local Rule 56.1(b)(1)(A), (B). If the non-moving party fails to comply with this requirement, the material facts set forth in the moving party's concise statement "will be deemed admitted." Local Rule 56.1(f). Here, the Debtors did not set forth any facts by affidavit or otherwise showing there is a genuine issue for trial. Nor did the Debtors respond to the United State's Concise Statement of Facts.

Summary judgment may be ordered only if the record shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c). The evidence, and all reasonable inferences therefrom, must be viewed in the light most favorable to the non-moving party." <u>In re Kaypro</u>, 218 F.3d 1070, 1073 (9th Cir. 2000) citing <u>T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

The party moving for summary judgment "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The moving party is not required to produce evidence negating the

---

[1] The 1994 Amended Return has 95 pages of material attached to it, the 1995 Return has 23 pages attached to it, and the 1996 Return has 59 pages attached to it.

opponent's claim, but need only point out to the court the absence of evidence to support the opponent's case.  Id. at 325.  Once the moving party meets this burden, the party opposing the motion then has the burden of showing that there remains a genuine issue as to some material fact.  To do this, the non-moving party must present affirmative evidence of a disputed material fact from which a jury might return a verdict in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

2.  Discargeability of Tax Penalties

The proof of claim filed by the IRS includes penalties of $121,342.41 on both the unsecured priority claims of $74,522.88 and on general unsecured claims of $46,819.53.  Discharge of tax penalties is governed by § 523(a)(7) of the Bankruptcy Code.  This section provides that a discharge under section 727 does not discharge an individual debtor from any debt:

> "(7) to the extent such a debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty —
>
> > (A) relating to a tax of a kind not specified in paragraph (a) of this subsection; or
> >
> > (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7).

> "Carefully parsed, the section initially makes nondischargeable a 'debt that is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit.'  Withdrawn from this class, however, are any such fines, penalties, or forfeitures that are 'compensation for actual pecuniary loss.'  These are dischargeable.  The double negative, 'does not discharge' and 'not compensation for actual pecuniary loss,' accomplishes this end.
>
> Another group of penalties are withdrawn from the **nondischargeable** group.  These appear in parts (A) and (B) of § 523(a)(7). Part (A) withdraws tax penalties attributable to **taxes** which are not **nondischargeable**.  That is, part (A) makes dischargeable tax penalties attributable to dischargeable taxes. This follows because part (A) relates 'to a tax of a kind not specified in paragraph (1) of this subsection.' 11 U.S.C. § 523(a)(7)(A) (emphasis added).  Those types specified in paragraph (1) are not dischargeable **taxes**.  In relevant part 'paragraph (1) of this subsection' makes not dischargeable 'any debt' that is 'for a tax ... with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.' 11 U.S.C. § 523(a)(1)(C).

The other group of penalties withdrawn from the nondischargeable group is described in part (B). It is quite straightforward. It makes dischargeable any tax penalty 'imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.' A penalty imposed on unpaid taxes accruing more than three years before the filing of the bankruptcy petition is dischargeable." McKay v. United States, 957 F.2d 689, 693 (9th Cir. 1992).

The United States concedes that the bulk of the penalties assessed against the Rohdes are for unpaid taxes accruing more than three years prior to the filing of the Rohdes' bankruptcy petition. It contends, however, that "subsumed" within this total is a tax penalty of $1,596.06 for income taxes owed for tax year 2003, less than three years prior to the date the Rohdes filed their petition. The Rohdes do not contest this assertion. Thus, $1,596.06 of the penalties included within the IRS's general unsecured claim is exempt from discharge under 11 U.S.C. § 523(a)(7)(B). The balance of the penalties, $119,746.35 are dischargeable.

3. Dischargeabilty of 1994, 1995 and 1996 Taxes

United States contends that the taxes for tax years 1994, 1995 and 1996 are exempt from discharge under section 523(a)(1)(B)(1). This section exempts from discharge taxes for which a return has not been filed. United States concedes that the Rhodes "purported" to file returns for tax years 1994, 1995 and 1996 but contends that those returns do not meet the definition of "return" articulated by the US Tax Court in Beard v. Commissioner, 82 T.C. 766, 1984 WL 15573 (1984) aff'd 793 F.2d 139 (6th Cir. 1986) and adopted by the Ninth Circuit in Hatton v. United States, (In re Hatton), 220 F.3d 1057 (9th Cir. 2000). Under this standard, "[i]n order for a document to qualify as a return: '(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.'" Hatton at 1060-61 (9th Cir. 2000).

The jurat contained at the end of the official IRS form 1040 requires that the taxpayer acknowledge that the document was signed "under penalties of perjury." At the time they filed the Initial 1994 Return the Rohdes altered the jurat on the form to indicate that their signatures on the return were "without prejudice." By altering the jurat in this manner the Rohdes, in essence, retracted the statement that the document was signed "under penalties of perjury." Thus, the Initial 1994 Return fails to comply with the second prong of the Beard test and cannot be treated as a return.

Although the Rohdes initially failed to respond to the IRS's request that they file an amended 1994 return, they eventually did so. The amended return was filed along with the Rohdes' 1995 and 1996 returns after the IRS filed substitute returns for the Rohdes for those tax years and assessed taxes against the Rohdes based on the substitute returns. The United States contends that, as a matter of law, returns filed after an assessment has been filed fail to satisfy the fourth prong of the Beard test. In support of this contention the United States cites Moroney v United States (In re Moroney), 352 F.3d 902 (4th Cir. 2003) and Hatton .

In Moroney the Fourth Circuit held that "income tax forms unjustifiably filed years late, where the IRS has already prepared substitute returns and assessed taxes, do not constitute 'returns' for purposes of 11 U.S.C. § 523(a)(1)(B)(i)" because they do not represent the taxpayers honest and reasonable attempt to satisfy the requirements of the tax law. Moroney at 907. However, contrary to the United State's assertion, Moroney does not stand for the proposition that late filed returns can never qualify as a return under the Beard standard. To the contrary, the Moroney court specifically noted that "[c]ircumstances not presented in [that] case might demonstrate that the debtor, despite his delinquency, had attempted in good faith to comply with the tax laws." Id. at 907.

Nor does Hatton support the United State's argument that a late filed return can never qualify as a return under the Beard standard. In Hatton the taxpayer failed to file any return for 1983. After the IRS filed a substitute return and began collection efforts, and after months of negotiation, the taxpayer entered into an installment payment agreement with the IRS. Prior to completing all of the payments due under the agreement the taxpayer filed a Chapter 7 bankruptcy and then sought a determination that the taxes due under the agreement were dischargeable. The bankruptcy court found that the substitute return prepared by the IRS together with the installment agreement signed by the taxpayer constituted a "return" within the meaning of section 523(a)(1)(B)(i). The United States appealed to the BAP which affirmed the bankruptcy court. Id. at 1059. It then appealed to the Ninth Circuit which reversed the lower court's holding that the taxpayer's "belated acceptance of responsibility, however, does not constitute an honest and reasonable attempt to comply with the requirements of the tax law." Id. at 1061. However, in reaching the conclusion that the tax debt was nondischargeable, the court specifically noted that "Hatton never filed a return and only cooperated with the IRS once collection became inevitable . . . ." Id. at 1061. (Emphasis added).

As noted, Hatton did not address the issue of whether a late filed return could ever qualify as a return under the Beard standard. However, the Ninth Circuit Bankruptcy Appellate Panel did address this issue in United States v. Nunez, (In re Nunez), 232 B.R. 778 (9th Cir. BAP 1998).

In Nunez the taxpayer failed to file returns for 1985-87 and 1989. The IRS subsequently prepared substitute returns and assessed the taxes it determined were owed. In 1994, nine years after the 1985 returns were due and after the assessment by the IRS, the taxpayer filed returns for the years at issue. In 1997, after the taxpayer attempted, unsuccessfully, to negotiate a compromise with the IRS, he filed a Chapter 7 bankruptcy petition and sought a determination that his tax debts were dischargeable. The United States opposed discharge of the tax debts alleging that they were assessed for years for which the debtor failed to file tax returns. It acknowledged that the debtor had filed post assessment returns, but argued that such filing did not constitute a reasonable effort to comply with tax laws. The court disagreed. It noted that "several courts have rejected this argument on the ground that it requires reading a requirement into the Bankruptcy Code that is not explicitly there. In other words, Section 523(a)(1)(B) does not state that the return must be filed prior to an assessment by the IRS in order to be effective for dischargeability purposes." Id. at 781. The court went on to note that if it adopted the position urged by the government, "[e]ffectively, a debtor, for whom the IRS prepares substitute returns, could never discharge taxes" Id. at 781. The Nunez court further noted that "Congress could have

conditioned discharge of tax debt on whether a return was filed prior to an assessment " but did not do so. Id. at 782. In light of this fact, the Nunez court refused to "read into Section 523(a)(1)(B) the requirement that a debtor must have filed a return prior to an assessment by the IRS." Id. at 782.

In light of the holding of the Nunez case, I find that the fact that the Rohdes failed to file the 1994 Amended Return or the 1995 and 1996 Returns until after the IRS had assessed taxes for those years is not dispositive of the issue of whether the returns filed by the Rohdes meet the requirement that they evidence an honest and reasonable attempt to comply with the tax laws. Nonetheless, I conclude, based on the information contained in those purported returns that they do not evidence such an attempt and are therefore not returns as determined under the Beard standard.

The 1994 Amended Return, the 1995 Return and the 1996 Return contained zeros on all income lines, requested refund of all payments and withholdings and attached voluminous pages of arguments opposing the application of the internal revenue laws to the Rohdes. Virtually every court which has addressed the issue has concluded that tax returns showing "zero" income and containing tax protester arguments as to why the tax laws do not apply to the filer do not comply with the requirement that the returns evidence an honest and reasonable attempt to comply with tax laws. Williams v. Commissioner of Internal Revenue, 114 T.C. 136, 143 (US Tax Ct. 2000). See also Coulton v. Commissioner of Revenue, 2205 WL 2078518 (US Tax Ct. 2005) ("We doubt that a document containing all zeros and tax protester rhetoric represents an honest and genuine endeavor to satisfy the tax law"); Halcott v. Commissioner of Internal Revenue, 2004 WL 2110086 (US Tax Ct. 2004) ("The critical requirement that there must be 'an honest and reasonable attempt' to satisfy the tax law is clearly not met. Petitioner's attachment of two pages of tax-protestor arguments to the Form 1040 contained arguments that have been consistently rejected by the courts. Further, petitioner's denial of tax liability and refusal to self-assess on the Form 1040 does not evidence a reasonable attempt to file a tax return under the tax laws."); Cabirac v Commissioner of Internal Revenue, 120 T.C. 163, 169 (US Tax Ct. 2003) ("The Form 1040 and 1040A that petitioner submitted contain only zero entries, and it is clear from the attachments to those returns that petitioner did not make an honest and reasonable attempt to supply the information required by the Internal Revenue Code."); West v. United States, 2001 WL 1103229 (N.D. Ga. 2001)("Plaintiff's refusals to self-assess and denials of tax liability do not reveal a reasonable attempt to comply with the tax laws."); and In re Brumbaugh, 267 B.R. 800, 810 (Bankr. S.D. Ohio 2001) ("In the tax protestor cases, it is obvious that there is no 'honest and genuine' attempt to meet the requirements of the code. In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information." (Citations omitted))

The sole exception to the line of cases cited above appears to be the Ninth Circuit opinion in United States v. Long, 618 F.2d 74 (9th Cir. 1980). In Long, the defendant who filed tax returns in which he inserted zeros in spaces reserved for entering income, tax, and tax withheld, was convicted of willful failure to file tax returns. On appeal the Ninth Circuit reversed the conviction holding that the defendant had "made a return" within the meaning of the statute providing criminal penalties for failure to file tax returns. In reaching this conclusion the court

held that a document constituted a "return" within the meaning of the penalty statute, if it contained "information relating to the taxpayer's income from which the tax can be computed." Long at 75. In the defendant's case, the court found that "the I.R.S. could calculate assessments from [the defendant's] string of zeros, just as it could if [the defendant] had entered other numbers." It acknowledged that:

> "the resulting assessment might not reflect [the defendant's] actual tax liability, but some computation was possible. In this respect, the circumstances here differ from those in [other cases] in which defendants failed to complete tax forms or left them blank. Nothing can be calculated from a blank, but a zero, like other figures, has significance. A return containing false or misleading figures is still a return." Id. at 75- 76.

The Long case appears to support the Rohdes' contention that their 1994 Amended Return as well as the 1995 and 1996 Returns, all of which contained zeros for income, constitute returns for purposes of dischargeability under § 523(a)(1)(B). However, there is an important factor which weighs against that conclusion. In reaching its conclusion in Long, the Ninth Circuit relied on a definition of "return" used by the Tenth Circuit in United States v. Porth, 426 F.2d 519, (10th Cir. 1970) cert. denied, 400 U.S. 824 (U.S. 1970) and adopted by the Ninth Circuit in United States v. Klee, 494 F.2d 394 (9th Cir. 1974) cert denied, 419 U.S. 835 (U.S. 1974). Under that standard a document constituted a "return" if it contained "information relating to the taxpayer's income from which the tax can be computed." Young, at 75. Since that time the Ninth Circuit has adopted the more comprehensive Beard standard. See Hatton, supra. Under this standard, to qualify as a return, a document must not only "contain sufficient date to allow calculation of tax", it must also "represent an honest and reasonable attempt to satisfy the requirements of the tax law." I find it doubtful that the Long court would have found that the defendant's returns met the "honest and reasonable attempt" prong of the Beard test.

Given the fact that Long was decided under a standard that is no longer used in this Circuit, I do not believe that it is controlling on the issue of whether the purported 1994 Amended Return or the 1995 and 1996 Returns constitute "returns" for purposes of § 523(a)(1)(B).

I found no Ninth Circuit case law addressing the issue of whether a return containing only zeros constitutes a return under the Beard standard. Other courts have, uniformly, held that they do not. While those decisions are not controlling on this court, I find their reasoning persuasive. In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information. In re Brumbaugh, 267 B.R. 800, 810 (Bankr. S.D. Ohio 2001). Where a taxpayer's returns contain no self assessment but do contain specious arguments denying tax liability, he has not shown a reasonable attempt to comply with tax laws. West v. United States, 2001 WL 1103229 (N.D. Ga. 2001).

The Rohdes' 1994 Amended Return and their 1995 and 1996 Returns all contained zeros on all income lines and attached extensive arguments opposing the application of the internal revenue laws to them. These documents do not represent an honest and reasonable attempt to comply with tax laws and are therefore not "returns" under the standard set forth in Beard and

Adam F. Hulbig
Leslie Ernst and Jane Hill Rhode
January 3, 2006
Page 9

adopted by this Circuit in <u>Hatton</u>. Consequently, I find that as of the date of filing the debtors had not filed returns for tax years 1994, 1995 or 1996 and that the taxes assessed against them for those tax years are, therefore, nondischargeable under section 523(a)(1)(B).

    By way of summary then:

**Secured Claims ($6,966.00):**                                Paid via set off post-petition

**Unsecured Priority Claims Relating to 1997, 1998, 1999, 2000, and 2003 Assessments:**

| | |
|---|---|
| Taxes ($94,497.00): | Not included in this lawsuit |
| Interest ($27,094.60): | Not included in this lawsuit |
| Penalties Associated with Unsecured Priority Claims ($74,522.88): | Discharged except for $1,596.06 |

**Unsecured General Claims Relating to 1994, 1995, and 1996 Assessments:**

| | |
|---|---|
| Taxes ($59,348.31): | Not discharged |
| Interest ($51,495.23): | Not discharged |
| Penalties Associated with Unsecured General Claims ($46,819.53): | Discharged |

    Counsel for the United States should submit an order granting summary judgment and Judgment consistent with this letter within 20 days.

                                      Very truly yours,

                                      Trish M. Brown

TMB/smm